Nicholas Ranallo, Attorney at Law #275016
2443 Fillmore St. #380-7508
San Francisco, CA 94115
Telephone No.: (831) 607-9229
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com
Attorney for Defendant

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO

MALIBU MEDIA, LLC

      Plaintiff,

v.

KEVIN PETERSON


      Defendant
_____

KEVIN PETERSON

      Counterclaimant

v.

MALIBU MEDIA, LLC

      Counterdefendant

Case No. 3:16-CV-00786-JLS-NLS


**OPPOSITION TO MALIBU MEDIA'S MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES**

**Hearing Date: January 12, 2017 at 2:00 pm**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff filed the instant action on April 1, 2016, alleging that an unknown individual had used a particular IP address to download and share 115 of its allegedly copyrighted works over the course of a multi-year period.  On April 21, 2016, Plaintiff sought permission to serve a subpoena on Defendant's ISP, seeking to identify the *subscriber* associated with the IP address at issue.  This request was granted on May 6, 2016.  On July 19, 2016, Plaintiff amended the complaint in this matter, and substituted the subscriber Kevin Peterson for the Doe defendant.

Following waiver of service, Defendant filed an Answer which included eight affirmative defenses.  On October 10, 2016 Plaintiff filed a motion seeking to strike each of Defendant's affirmative defenses.  Plaintiff's motion makes generalized legal arguments about why each defense may prove unavailable in the future, and makes no effort to demonstrate how it has been prejudiced by the affirmative defenses put forward by Defendant – as is required by applicable case law in this circuit.  For that reason, and for the additional reasons set forth below, Defendant respectfully requests that this Court deny Plaintiff's Motion to Strike, and allow the defendant to pursue discovery aimed at proving each of the elements of the proffered defenses.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(f), a court may strike from any pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Motions to strike are disfavored and infrequently granted."  *Neveu v. City of Fresno*, 392 F.Supp.2d 1159, 1170 (E.D. Cal. 2005).  The reason for this is because motions under 12(f) are "often used as delaying tactics, and because of the limited importance of pleadings in federal practice."  *SEC v. Sands*, 902 F.Supp.1149, 1165 (C.D. Cal. 1995)(Quoting Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial § 9:381 (1995) and *Systems Corp. v. American*

*Telephone and Telegraph*, 60 F.R.D. 692,694 (S.D.N.Y. 1973)).   Indeed, "motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Nation v. Bank of California*, 72 F.R.D. 550, 551 n.4 (N.D. Cal. 1976).  Accordingly, the Ninth Circuit requires a showing of prejudice by the moving party.  See, e.g. *Fantasy Inc., v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993).

"To strike an affirmative defense, the moving party must convince the court that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed."   *Id.* (internal quotations and citations omitted). Moreover, the court "views the pleadings in the light most favorable to the non-moving party." *Neilson v. Union Bank of Cal., N.A.,* 290 F.Supp.2d 1101, 1152 (C.D.Cal.2003).

A motion to strike must be based on the pleadings themselves, and a court should not consider declarations or other matters outside the pleadings.  See *Fantasy, Inc., v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993)(" grounds for motion to strike must appear on face of pleading or from matters which court may judicially notice", quoting William W. Schwarzer et al., Cal. Prac. Guide: Fed. Civ. Pro. Before Trial 9:403 (TRG 1992)).  See also,  e.g. *Munoz v. PHH Corp*., 2013 WL 1278509 at *3 (E.D. Cal. March 26, 2013)("...matters outside the pleadings generally will not be considered."); *Ciprari v. Servicos Aereos Cruzeiro do sul, S.A. (Cruzeiro)*, S.D.N.Y.1965, 245 F.Supp. 819, affirmed 359 F.2d 855 (SDNY 1965)(accord); South v. U.S., 40 F.R.D. 374 (N.D. Miss. 1966)(accord);  *Krauss v. Keibler-Thompson Corp*., 72 F.R.D. 615 (D. Del. 1976)(accord); *Cherry v. Crow*, 845 F. Supp. 1520 (M.D. Fla. 1994)(accord); F.D.I.C. v. White, 828 F. Supp. 304 (D.N.J. 1993)(accord) *Zaloga v. Provident Life and Acc. Ins. Co. of America*, 2009 WL 4110320, *8 (M.D. Pa. 2009).

If the court is in doubt as to whether a matter challenged via motion to strike may raise an issue of fact or law, the motion to strike should be denied and the sufficiency of the allegations

should be adjudicated on the merits.  *Corrections USA v. Dawe*, 504 F.Supp.2d 924 (E.D. Cal. 2007).

The Southern District of California has rejected the application of *Twombly* and *Iqbal* to the pleading of affirmative defenses.  See, e.g. *Kohler v. Staples the Office Superstore, LLC.,* 2013 WL 544058 (S.D. Cal. Feb. 12, 2013); *DC Labs, Inc., v. Celberity Signatures Intern. Inc.,* 2013 WL 4026366 (S.D. Cal. Aug. 6, 2013).  As such, the "key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense."  *Wyshak v. City Nat'l Bank.,* 607 F.2d 824, 827 (9th Cir. 1979).  "For well-established defenses, merely naming them may be sufficient…" *Ganley v. Cnty. Of San Mateo,* 2007 U.S. Dist. LEXIS 26467, at *5 (N.D. Cal. Mar. 22, 2007).

### III.    ARGUMENT

#### A. First Affirmative Defense: Unclean Hands

Defendant has set forth an affirmative defense of unclean hands, based upon a series of allegations related to the illegality of the creation of the works at issue in this litigation, as well as the illegal monitoring of the Defendant's IP address and the illegal collection and retention of data associated with that IP address.

Despite Plaintiff's claims to the contrary in its Motion to Strike, an unclean hands defense requires two elements in the Ninth Circuit.  "First, a defendant must prove the plaintiff engaged in inequitable conduct and, second, that the plaintiff's conduct relates directly to the claim which it has asserted against the defendant."  *Intamin, Ltd., v. Magnetar Techs. Corp.,* 623 F.Supp.2d 1055, 1074 (C.D. Cal. 2009).  The Ninth Circuit has repeatedly identified these two elements as necessary to an unclean hands defense.  See, e.g. *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir. 1997)("In its claim for equitable relief, 'the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims.");* Fuddruckers, Inc. v.*

*Doc's B.R. Others, Inc.,* 826 F.2d 837, 847 (9ᵗʰ Cir. 1987)(same).  Although some courts require a defendant to establish personal harm, the court is permitted to consider harm to the public interest. *Intamin* at 1075.  See *Republic Molding Corp. v. B.W. Photo Utils.,* 319 F.2d 347, 349 (9th Cir. 1963).

In the instant case, Defendant's unclean hands defense relates specifically to the production of the works at issue in this lawsuit and Plaintiff's conduct in conducting surveillance of California IP Addresses, including an IP address allegedly assigned to the Defendant.  Indeed, it appears that the IP monitoring runs afoul of both California law and German law (where the monitoring occurs), and Defendant has been particularly targeted by the monitoring.  Moreover, Defendant alleges that Plaintiff has violated a number of laws – both federal and state-  in creating the works that form the basis of its underlying claims.  Chief amongst these is 18 U.S.C. 2257, which requires anyone who produces sexually explicit films, like Plaintiff herein, maintain individually identifiable records pertaining to their "performers."  These record-keeping requirements are designed to ensure that the actresses appearing in Plaintiff's films are indeed consenting adults.

The Northern District of Illinois has examined an unclean hands defense in precisely this context, in *Malibu Media v. Doe*, 2014 U.S. Dist. LEXIS 77929 (N.D. Ill. 2014).  There, as here, Plaintiff sought to strike an affirmative defense of unclean hands.  The court denied Plaintiff's motion on the issue, holding that "the Court is not prepared to say that federal copyright law would permit one who has produced child pornography—which cannot be legally produced or distributed anywhere in the United States—or who has failed to comply with federally-mandated requirements aimed to deter production of child pornography to enforce a copyright relating to such material." *Id*. at *13.  Unless this Court is prepared to hold otherwise at this time – thereby holding that federal law offers full copyright protection to illegal produced child pornography – it must reject Plaintiff's

attempt to strike the Defendant's unclean hands defense.[1]

### B. Second Affirmative Defense: Implied License

Defendant's affirmative defense of implied license is based on the allegation that Plaintiff has itself "seeded" some or all of the works at issue to the BitTorrent network. This allegation is not pulled from thin air, but rather based on the otherwise unexplained fact that a large number of Malibu Media's works appear on the BitTorrent network before they are "officially" released by Malibu Media through its website.

"A license is a defense to a claim of copyright infringement. A copyright owner may grant a nonexclusive license expressly, *or impliedly through conduct*." *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1225-26 (C.D. Cal. 2007)(emphasis added). Plaintiff's opposition cites a three-part test that it claims is required in every case before the court can find that the Plaintiff has granted defendant an implied license. As with the argument regarding unclean hands, above, Plaintiff attempted unsuccessfully to make this argument to the Northern District of Illinois.

In rejecting Plaintiff's attempts to strike the defense, the court noted that "It does not appear to the Court that the three-part test…describes the only way to establish an implied license. In *Baisden v. I'm Ready Prods.*, 693 F.3d 491 (5th Cir. 2012), for example, the Fifth Circuit indicated that all that is needed to show an implied license is that the "totality of the parties' conduct indicate[d] an intent to grant such permission." *Malibu Media v. John Doe.*, 2014 U.S. Dist. LEXIS 77929 (N.D. Ill. 2014).

---

[1] To the extent that Plaintiff argues that the defense is unavailable to Defendant since he is not the underage performer depicted in the videos, Plaintiff's argument is both ridiculous and unsupported by 9th Circuit precedent. Indeed, in *Republic Molding Corp. v. BW Photo Utilities*, 319 F.2d 347 (9th Cir. 1963), the court recognizes that a patent plaintiff may be unable to recover based upon its violation of federal law in procuring the patent, noting that "the extent of actual harm caused by the conduct in question, *either to the defendant or to the public interest,* is a highly relevant consideration." *Id.* at 350.

Indeed, accepting Plaintiff's position in this matter would effectively mean that a copyright holder could place a simple "Download" button on their own public website, allowing any visitor to download hundreds of works with a single click (and the apparent permission of the copyright owner who posted it). When a user actually clicks the button and downloads the works, however, he is sued for millions of dollars for copyright infringement. This result is clearly preposterous, as the conduct of the hypothetical website owner has clearly demonstrated an intent that visitors to the site download the hypothetical files without condition.

The situation in the present case wholly analogous. Defendant alleges that Plaintiff has made its own works available via BitTorrent, a file-sharing protocol designed to freely distribute any file in an exceedingly efficient fashion. When individuals download the files that Plaintiff has made available, Plaintiff sues the owner of the relevant IP address, seeking many times the value of the allegedly infringed works. Plaintiff's alleged conduct in intentionally making the works available on BitTorrent has demonstrated a willingness for those works to be freely downloaded and distributed via that network. Thus, Defendant has alleged that Plaintiff has - ***through its conduct*** - created an implied license for users to download the work that it has uploaded.

### C.  Third and Eighth Affirmative Defenses: Laches and Statute of Limitations

Defendant's Answer sets forth related affirmative defenses of Laches and has pled that some or all of Plaintiff's claims are barred by the statute of limitations. As Plaintiff's Motion to Strike suggests, the line between these defenses has been blurred in the copyright context. See, e.g. *Patrella v. Metro-Goldwyn-Mayer, Inc.,* 134 S.Ct. 1962 (2014) (noting that laches may not be used to preclude adjudication of a claim for damages brought within the three-year window, but may nonetheless be relevant at the "remedial stage").

Notwithstanding the foregoing, it is undisputed that a Defendant may interpose either

7

defense if a Plaintiff seeks to impose liability for acts occurring beyond the three-year statute of limitations set by 17 U.S.C. §507(b).  The Ninth Circuit uses the "discovery rule", whereby the statute of limitations is triggered on the date when the Plaintiff knew or should have known of that the infringement was taking place.  See, e.g. *Polar Bear Productions, Inc., v. Timex Corp.,* 384 F.3d 700, 706-707 (9th Cir. 2004); *Brighton Collectibles Inc. v. Coldwater Creek, Inc.,* 2010 U.S. Dist. LEXIS 98224 (S.D. Cal. Sept. 20, 2010).

Plaintiff's complaint in the instant case does not indicate when an individual IP address was *first* observed sharing the subject works (let alone when it first *should have been* detected), but only the "Most Recent Hit."  See ECF No. 7-2.  Many of these "most recent hit" dates are within days or weeks of the running of the statute of limitations.  Moreover, it is clear from Plaintiff's conduct around the country that they have been monitoring their own works and particular IP addresses for, in some cases, several years.  Thus, to the extent that Plaintiff *first* observed a work being shared via BitTorrent more than three years from the date of filing of this suit, Plaintiff's claims would indeed be time-barred.  Moreover, simply pleading that the statute of limitations has been satisfied in a particular case is not sufficient to preclude a defendant from pursuing the defense, and seeking to prove otherwise.  Defendant should be entitled to conduct discovery to this end, and thus his affirmative defenses based upon laches and the statute of limitations must be allowed to stand at this stage.

**D.  Fourth Affirmative Defense: Constitutionally Excessive Damages**

Defendant has raised an affirmative defense that the measure of damages sought is constitutionally excessive.  Indeed, were Plaintiff able to prove liability in this matter, maximum statutory damages in this matter would exceed $17 million.  A membership to Plaintiff's website allowing full access and downloads for all of Plaintiff's works for two years costs $149.95.

OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES

Judge Rice in the Eastern District of Washington was recently faced with a defaulting BitTorrent defendant and was confronted with the issue of statutory damages in these cases. The Plaintiff in that matter sought $30,000 per defaulting defendant. In deciding to award only minimum statutory damages on each claim, the court correctly noted that a larger award "would be an excessive punishment, considering the seriousness of each Defendant's conduct and the sum of money at issue." *Elf-Man, LLC v. Albright,* 2014 U.S. Dist. LEXIS 155479 (E.D. Wash. Sept. 3, 2014). Judge Rice also addressed the constitutional implications of such a large damage award in a case like this, noting that

> "In *Austin v. United States*, the Supreme Court held that the Excessive Fines Clause of the Eighth Amendment applies in civil, not just criminal, proceedings. *Austin v. United States*, 509 U.S. 602, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993). As the Court explained, the purpose of the Eighth Amendment is to limit the government's power to punish, and "civil sanctions that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." Id. at 607-09 (applying the amendment to civil forfeiture proceedings). Undoubtedly, the statutory damages imposed for violation of copyright infringement are intended to serve a deterrent purpose, see e.g., *Nintendo of Am., Inc. v. Dragon Pac. Intern*, 40 F.3d 1007, 1011 (9th Cir. 1994) (recognizing the punitive and deterrent effect of the Copyright Act's statutory damages), and thus can properly be characterized as punishment. *Id. at 18.*

As Judge Rice recognized, an award of damages that includes a punitive component necessarily implicates the Excessive Fines Clause of the Eighth Amendment. Prior case law evaluating punitive damage claims in the context of the Eighth Amendment have struck down punitive awards that exceed the actual damages by far less than the amount herein. For example, in *BMW of North America, Inc., v. Gore*, 517 U.S. 559 (1996), the Supreme Court struck down a punitive damage award of $2,000,000 where the economic damages amounted to only $4000 – a factor of 500. Subsequently, in *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003), the Supreme Court again struck down an excessive punitive damage award of $145 million

9

in a case where actual damages were $1 million – a factor of 145.  In so doing, the Court noted that "single-digit multipliers are more likely to comport with due process, while still achieving the State's goal of deterrence and retribution, than awards with rations in the range of 500 to 1 or, in this case, of 145 to 1."  *Id.* at 425.

Plaintiff herein seeks to recover more than 115,000 times its actual damages, but nonetheless urges the court that no award, no matter how ridiculous, could possibly have constitutional implications.

Congress has seen fit to give judges and juries enormous leeway in determining the proper amount of a statutory damage award in the copyright context, and has provided extremely little guidance as to how the enormous discretion is to be exercised.  It is decidedly the province of the courts to ensure that the award in a particular case conforms to constitutional requirements.  Plaintiff here asks the court to abrogate that responsibility at the outset, and declare that any damage award – no matter how ridiculous, comports with the Eighth Amendment. Defendant respectfully requests that this court not abandon its duties in this regard, especially at the pleading stage.

**E.  Fifth Affirmative Defense: Failure to Mitigate Damages**

Defendant has pled an affirmative defense of failure to mitigate damages based primarily on the Plaintiff's own complaint, which alleges that Plaintiff has monitored the IP address at issue herein for nearly three years without ever taking any action to curtail alleged infringements occurring via a monitored internet connection.

Plaintiff is correct that some other courts have held that a failure to mitigate defense is inapplicable in the context of statutory damages, but Plaintiff misstates the extent of concurrence on the issue when it asserts that "courts all agree" that the defense is inapplicable.  See ECF No. 17 at 7.  Plaintiff cites no appellate authority in support of its proposition, and in fact district courts are

divided on whether a failure to mitigate defense remains relevant in the context of statutory damages.

Indeed (as Plaintiff should well know) district courts have recently rejected multiple identical attempt to strike the defense in other Malibu Media cases.  See *Malibu Media v. Doe,* 2014 U.S. Dist. LEXIS 34151 (N.D. Ind. 2014); *Malibu Media, LLC v. Julien*, No. 1:12-cv-01730-TWP-MJD, 2013 U.S. Dist. LEXIS 133288, (S.D. Ind. Sept. 17, 2013).  The Eastern District of Virginia has also recently rejected attempts to strike the defense in the context of statutory damages, including in a case involving the Plaintiff herein.  *BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.,* 149 F. Supp. 3d 634, 676-77 (E.D. Va. 2015); *Malibu Media, LLC v. Guastaferro, Julien*, No. 1:14-cv-1544, 2015 U.S. Dist. LEXIS 99217, 2015 WL 4603065, at *5 (E.D. Va. July 28, 2015).

Courts that allow a failure to mitigate defense recognize that "a plaintiff's actual damages are a relevant consideration in determining statutory damages under the Copyright Act.  Because actual damages are relevant, so too are the actions a plaintiff took to mitigate those damages." *BMG Rights Mgmt.,* 149 F.Supp. 3d 634, 676-77 (E.D. Va. 2015).

The instant case provides a clear example of why a failure to mitigate defense must remain viable, even if a Plaintiff elects statutory damages.  Plaintiff's own allegations in this matter state that they have been monitoring a particular IP address for three years or more.  Plaintiff alleges that, during the course of those three years, it observed and documented some individual or individuals distributing 115 of its works via the monitored IP address.  Plaintiff took no actions of any kind during the course of those three years, instead simply observing and documenting what it claims is a persistent pattern of infringement.  Finally, just in time for statute of limitations purposes (or so they allege), they file suit, seeking statutory damages for 115 copyright infringements, of which perhaps 100 or 110 could have been easily prevented.  Defendant respectfully requests that this court consider the policy rationales supporting the general duty to mitigate damages and the value of that

11

OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES

1    duty, even in the context of a copyright statutory damage award.

2

3        **F.  Sixth Affirmative Defense: Waiver**

4        Defendant herein has asserted an affirmative defense of waiver.  Waiver is "the intentional

5    relinquishment of a known right with knowledge of its existence and the intent to relinquish it."

6    *U.S. v. King Features Entm't, Inc.,* 843 F.3d 394, 399 (9th Cir. 1988).  The defense in this case is

7    premised upon Plaintiff's seeding of the work on the BitTorrent network.  By making the work

8    available in such a manner, Plaintiff has demonstrated an intent to relinquish its right to limit

9
     distribution of the work via that medium.  Indeed, the entire architecture of the BitTorrent network
10
     is designed to facilitate the free and efficient distribution of the seeded works – intentionally putting
11
     a work on the network demonstrates the requisite intent.  As Defendant can potentially satisfy each
12
     of the required elements, his waiver defense must be allowed to stand at this state.
13

14

15       **G.  Seventh Affirmative Defense: Estoppel**
16
         Finally, Defendant has asserted an equitable defense of estoppel.  This defense requires four
17
     elements: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall
18
     be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;
19
     (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his
20
     injury.  *Hampton v. Paramount Pictures Corp.,* 279 F.2d 100 (9th Cir. 1960).
21
         The affirmative defense in this matter (as with the defenses of implied license and estoppel,
22
     above), are premised on the allegation that Plaintiff or its agents have themselves seeded Plaintiff's
23
     works to the BitTorrent network in order to entrap IP addresses, so that they may later sue the
24
25   subscriber of that IP address for damages out of any proportion to the value of the seeded works.

26   This satisfies each of the elements.  Plaintiff knowingly seeds the works on BitTorrent, with the
27

28

intent that they be freely downloaded.  This satisfies the first two elements.  The third element is likewise satisfied, as the subscriber is wholly unaware of Plaintiff's activities in this regard.  The final element is satisfied when the downloader makes a connection to Plaintiff's investigator only to be ensnared – or to ensnare a family member or neighbor – in Plaintiff's scheme to artificially inflate the value it can receive for its works via litigation.[2]

## IV.   CONCLUSION

As set forth above, Defendant has established – or seeks to establish through discovery – each of the required elements for the affirmative defenses it has set forth.  The Southern District of California requires only that a Defendant give Plaintiff "fair notice" of the affirmative defenses that he may employ.  Defendant herein has far surpassed this low threshold.  Moreover, a Plaintiff seeking to strike affirmative defenses is required to demonstrate that it would suffer prejudice should the court fail to strike the defenses in question.  Plaintiff has made no effort to demonstrate that it would suffer any prejudice in this matter, should the contested defenses be allowed to stand.  As such, and for the reasons more fully set out herein, Defendant respectfully requests that this Court deny Plaintiff's Motion to Strike in its entirety.


DATED: November 1, 2016            NICHOLAS RANALLO, ATTORNEY AT LAW


By:  _____/s/ Nicholas Ranallo_____

---

[2] Defendant of course denies that he has downloaded or otherwise shared the works at issue.  Defendant's affirmative defenses – like all affirmative defenses – are pled in the alternate and are based on the premise that even if a factfinder were to determine that the elements of the underlying claim were established, liability would nonetheless be barred by equity.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Nicholas Ranallo (Cal Bar # 275016)
2443 Fillmore Street, #380-7508
San Francisco, CA 94115
(831) 607-9229
Fax: (831) 533-5073
nick@ranallolawoffice.com

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

THE UNDERSIGNED HEREBY CERTIFIES that on this first day of November, 2016, a true and correct copy of the foregoing was transmitted to counsel or record for Plaintiff via ECF.

/s/      Nicholas R. Ranallo

Nicholas Ranallo, Attorney at Law

OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES