UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>                                    Plaintiff,<br><br>v.<br><br>KEVIN PETERSON,<br><br>                                    Defendant. | Case No.: 16-CV-786 JLS (NLS)<br><br>**ORDER (1) DENYING MOTION TO DISMISS AND (2) GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE**<br><br>(ECF Nos. 16, 17) |

Presently before the Court are Plaintiff Malibu Media, LLC's (1) Motion to Dismiss Defendant's Counterclaim, ("MTD," ECF No. 16), and Motion to Strike Defendant's Answer to Amended Complaint, ("MTS," ECF No. 17). Also before the Court are Defendant Kevin Peterson's oppositions to the MTD, ("MTD Opp'n," ECF No. 22), and the MTS, ("MTS Opp'n," ECF No. 23), and Plaintiff's reply in support of its MTD, ("MTD Reply," ECF No. 27), and MTS, ("MTS Reply," ECF No. 26). The Court vacated the hearing on the motions and took them under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 30.) After considering the parties' arguments and the law, the Court rules as follows.

/ / /

/ / /

# BACKGROUND

Plaintiff Malibu Media, LLC (d/b/a "X-Art.com") is the registered owner of several copyrighted works. (First Am. Compl. ("FAC") ¶¶ 3, 8, ECF No. 7.) Plaintiff accuses Defendant Kevin Peterson of infringing Plaintiff's copyrights by using the BitTorrent file distribution network ("BitTorrent") to download, copy, and distribute Plaintiff's works over the Internet. (*See id.* ¶¶ 10–25 (explaining the BitTorrent technology, the investigatory steps Plaintiff used to detect Defendant's alleged infringement, and noting that Defendant is a "habitual and persistent BitTorrent user and copyright infringer").) Plaintiff brings a sole count of direct infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*, against Defendant Peterson. (*See generally id.*)

Defendant filed an Answer to Plaintiff's FAC, asserting affirmative defenses and a counterclaim. (Answer, ECF No. 12.)

# ANALYSIS

Plaintiff now moves to dismiss Plaintiff's Counterclaim and strike several of Plaintiff's affirmative defenses. The Court considers each of Plaintiff's motions in turn.

## I. Motion to Dismiss

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S.

at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.*

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

### B. Analysis

Plaintiff argues that Defendant's counterclaim for declaratory relief is repetitious and unnecessary "because it merely restates issues that are already before this Court;

/ / /

/ / /

/ / /

namely, whether Defendant is liable for the alleged infringement." (MTD 2,[1] ECF No. 16.) Defendant responds that while the Court has authority to dismiss redundant counterclaims, here the Court should not dismiss the counterclaim in order to prevent Plaintiff from seeking an "easy exit" once it has determined that Defendant has not infringed (i.e., Defendant might seek fees for having to defend this suit). (MTD Opp'n 3–4, ECF No. 22.) In relevant part, Defendant's counterclaim states:

> 1. Plaintiff has alleged a copyright infringement claim against Defendant based on the allegation that Defendant has downloaded or otherwise shared numerous works that purportedly belong to Plaintiff.
> . . .
> 3. Defendant has denied that they are responsible for downloading or otherwise sharing the works at issue in this suit.

(Answer 11–12, ECF No. 12.)

The Court agrees with Defendant. As an initial matter, Plaintiff is right that Defendant's counterclaim is redundant—the Court will determine whether Defendant is liable for copyright infringement based on Plaintiff's direct infringement claim, answering Defendant's counterclaim for declaratory judgment of non-infringement in the process. But although Plaintiff is right that district courts have the discretion to dismiss redundant counterclaims, *see, e.g.*, *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008), and that many courts have indeed dismissed similar counterclaims in copyright infringement cases, (*see* MTD 3–4, ECF No. 16 (collecting authority)), the Court here chooses to exercise its discretion and allow Defendant's counterclaim to remain. As Judge William Alsup found with regard to the same Plaintiff and the same argument:

/ / /

---

[1] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

Malibu Media argues that permitting defendant's counterclaim to proceed would require it to file an answer in which it would deny all the allegations and refer back to the complaint. This will, however, impose a negligible burden. Malibu Media also contends the declaratory judgment counterclaim would confuse a jury. Not really, however, a jury would never need to know that the case involves an affirmative claim of infringement and a declaratory judgment counterclaim of non-infringement. The jury could render one verdict resolving both claims. Malibu Media will suffer no prejudice.

Malibu Media's motion seems more like a gimmick designed to allow it an easy exit if discovery reveals its claims are meritless. Section 505 of Title 17 of the United States Code provides that a "prevailing party" may be awarded attorney's fees in a copyright infringement action; however, when a copyright plaintiff voluntarily dismisses a claim without prejudice, the defendant is not a prevailing party. *Cadkin v. Loose*, 569 F.3d 1142, 1150 (9th Cir. 2009). Absent defendant's counterclaim, if events reveal that this case is meritless, Malibu Media could voluntarily dismiss its affirmative claims without prejudice under Rule 41(a)(2), seeking to avoid an award of attorney's fees. If, however, defendant's counterclaim remains alive, he will be able to press his counterclaim.

*Malibu Media, LLC v. Doe*, No. C 15-04441 WHA, 2016 U.S. Dist. LEXIS 80003, at *4–5 (N.D. Cal. June 20, 2016).

The Court finds Judge Alsup's observations persuasive and adopts them as its own. Plaintiff is right that a dismissal under Federal Rule of Civil Procedure 41(a)(2) would require the Court's approval, including, among other things, that the action be dismissed with prejudice. (Reply 3, ECF No. 27.) "[B]ut a defendant can be rightly concerned over the possibility that a plaintiff might dodge an attorney's fee award in a meritless case. A defendant might thus put its own counterclaim in play." *Id.* at *5; *see also id.* at *6–8 (discussing the "troubling pattern" of abuse with regard to Malibu Media and other owners of copyrights in pornographic videos). The Court thus declines to eliminate one avenue for a potential fee award. Accordingly, the Court **DENIES** Plaintiff's MTD (ECF No. 16).

## II. Motion to Strike

### A. Legal Standard

Rule 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). Accordingly, "[a] defense may be struck if it fails to provide 'fair notice' of the basis of the defense." *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1048 (N.D. Cal. 2004); *see also Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979).

"Motions to strike are 'generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice.' " *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015) (quoting *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001)). "[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). "When ruling on a motion to strike, this Court 'must view the pleading under attack in the light most favorable to the pleader.' " *Id.* (citing *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005)).

Finally, this Court recently held that the *Twombly* and *Iqbal* pleading standard applies to affirmative defenses. *Rahman v. San Diego Account Service*, No. 16CV2061-JLS (KSC), 2017 WL 1387206 (S.D. Cal. Apr. 18, 2017). While the Court acknowledged that district courts are split on the issue, it ultimately determined that *Wyshak*'s "fair notice" standard, which relied on the sole case of *Conley v. Gibson*, 355 U.S. 41 (1957), had necessarily been abrogated by the Supreme Court's decisions in *Twombly* and *Iqbal*. *Id.* at *2. "Accordingly, 'fair notice' necessarily now encompasses the 'plausibility' standard;

///

whatever standard 'fair notice' previously encompassed no longer exists." *Id.* Accordingly, the Court here reviews Defendant's affirmative defenses for plausibility.

### B. Analysis

Plaintiff moves to strike each of Defendant's eight affirmative defenses "[i]n order to streamline the litigation and discovery process and to avoid prejudicing Plaintiff by needlessly increasing the duration and expense of litigation." (MTS 2, ECF No. 17.) The Court considers each of Defendant's arguments in turn.

#### 1. First Affirmative Defense: Unclean Hands

Plaintiff seeks to strike Defendant's affirmative defense of unclean hands because Defendant "simply (and erroneously) alleges that Plaintiff engaged in some legal offense affecting the public at large due to its 'failure to comply with Federal, State, and local laws, regulations, and ordinances.' " (MTS 4 (citing Answer ¶ 30, ECF No. 8).) Defendant responds that his defense is "based upon a series of allegations related to the illegality of the creation of the works at issue in this litigation, as well as the illegal monitoring of the Defendant's IP address and the illegal collection and retention of data associated with that IP address." (MTS Opp'n 4, ECF No. 23.) But the Ninth Circuit has clearly explained that "the defense of illegality or unclean hands is 'recognized only rarely, when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action. For instance, the defense has been recognized when plaintiff misused the process of the courts by falsifying a court order or evidence, or by misrepresenting the scope of his copyright to the court and opposing party.' " *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 990–91 (9th Cir. 2009) (quoting 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.09[B] (2008)). And none of Defendant's allegations of unclean hands directly relate to the propriety of this litigation—they instead encompass general violations of law both in the creation of the works and in monitoring Defendant's IP address. This does not go to the copyrightability of the works here at issue; therefore, the Court **GRANTS** Plaintiff's Motion to Strike Defendant's First Affirmative Defense. *See Dream Games*, 561 F.3d at 992 ("Thus, we hold that an award of either type of damages

available under the Copyright Act—actual or statutory—is not precluded by evidence of illegal operation of the copyrighted work, at least where the illegality did not injure the infringer.").

### 2. *Second Affirmative Defense: Implied License*

Defendant's second affirmative defense is based on an implied license. Specifically, Defendant asserts that "Plaintiff's conduct . . . including but not limited to seeding its own works on BitTorrent or otherwise allowing such works to appear on BitTorrent before being released on Malibu Media's own website, constitutes an implied license for users of BitTorrent." (Answer ¶ 33, ECF No. 12.)

Plaintiff argues that Defendant's defense must be stricken because he "fails to plead the . . . requisite elements to support a viable implied license defense." (MTS 5, ECF No. 17 (citing *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754–55 (9th Cir. 2008) ("[A]n implied license is granted when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work.").) Defendant argues that there is no indication that this three-part test is the only test used to determine an implied license, and that other courts have rejected a similar argument here made by Plaintiff. (MTS Opp'n 6–7, ECF No. 23.) The Court agrees with Plaintiff.

Specifically, *Asset Marketing* merely extended an earlier Ninth Circuit holding to the realm of computer programs. 542 F.3d at 754–55. And that earlier Ninth Circuit holding, *Effects Associates, Inc. v. Cohen*, did not expressly adopt an "implied license test," but instead found an implied license by analogizing to prior caselaw. 908 F.2d 555, 558–59 (9th Cir. 1990); *see also id.* (relying only on broad rule statement that a "nonexclusive license may be granted orally, or may even be implied from conduct" (citing 3 Melville Nimmer & David Nimmer, *Nimmer on Copyright* § 10.03[A], at 10–36 (1989))). This is sufficient to preclude striking Defendant's implied license defense, because it is plausible that the *Asset Marketing* analysis is not the only method of proving an implied license.

8

Accordingly, the Court **DENIES** Plaintiff's Motion to Strike Defendant's Second Affirmative Defense.

### 3. Third Affirmative Defense: Laches

Defendant's third affirmative defense is based on laches. Specifically, Defendant alleges that "[d]espite purportedly having actual knowledge than an individual was allegedly infringing Plaintiff's purportedly copyrighted works, Plaintiff took no efforts to curtail the alleged infringements." (Answer ¶ 35, ECF No. 12.) Plaintiff argues that this defense is necessary to the extent Plaintiff seeks to impose liability for acts occurring beyond the three-year statute of limitations set by 17 U.S.C. § 507(b), since the Ninth Circuit's "discovery rule" triggers the statute of limitations on the date when Plaintiff knew or should have known of Defendant's infringement. (MTS Opp'n 7–8, ECF No. 23.)

The Court agrees with Plaintiff. 17 U.S.C. § 507(b) states that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." In *Petrella v. Metro-Goldwyn-Mayer*, the Supreme Court held that laches could not bar a copyright infringement case that was brought within the appropriate statute of limitations, and would only bar certain equitable relief at the outset of a case in "extraordinary circumstances." 134 S. Ct. 1962, 1977 (2014); *see also Bizar v. Dee*, 618 F. App'x 913, 916 (9th Cir. 2015) ("[L]aches does not bar [an action] because that defense is unavailable in an action under the Copyright Act." (citing *Petrella*, 134 S. Ct. at 1972–73)).

Here, Plaintiff pled separate infringement of each of its works occurring during the three-year limitation period. While Defendant argues that the Ninth Circuit's discovery rule may bar these allegations based on Plaintiff's knowledge of Defendant's previous infringement, Defendant fails to cite any authority demonstrating the discovery rule's applicability in the copyright infringement context. To the contrary, the wealth of authority demonstrates that the statute of limitations begins anew for each act of infringement. *See, e.g.*, *Petrella*, 134 S. Ct. at 1969 ("It is widely recognized that the separate-accrual rule attends the copyright statute of limitations. Under that rule, when a defendant commits

successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs. In short, each infringing act starts a new limitations period."); *Wolf v. Travolta*, No. 2:14-CV-00938-CAS, 2014 WL 2472254, at *2 (C.D. Cal. June 2, 2014) ("This provision creates a three-year 'look-back' limitations period that permits plaintiffs to reach all acts of infringement that occurred within the previous three years."). Accordingly, the Court **GRANTS** Plaintiff's Motion to Strike Defendant's Third Affirmative Defense.

### 4. *Fourth Affirmative Defense: Unconstitutionally Excessive Damages*

Defendant's fourth affirmative defense asserts that "[t]he measure of damages sought by Plaintiff is unconstitutionally excessive." (Answer ¶ 37, ECF No. 12.) Specifically, Defendant argues that "were Plaintiff able to prove liability in this matter, maximum statutory damages in this matter would exceed $17 million. A membership to Plaintiff's website allowing full access and downloads for all of Plaintiff's works for two years costs $149.95." (MTS Opp'n 8–9, ECF No. 23.)

Defendant's fourth affirmative defense is premature. 17 U.S.C. § 504(c) sets a range of damages of "not less than $750 or more than $30,000 as the court considers just." And while Defendant is correct that the statute appears to authorize recovery in this case of "more than 115,000 times [Plaintiff's] actual damages[,]" (MTS Opp'n 10, ECF No. 23), there has not yet been an award of that magnitude entered in this case. Of course, the ultimate the award, if any, will have to comply with United States Constitution. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416–18, 426 (2003) (explaining Eighth-Amendment check on punitive damage awards, reversing award as constitutionally excessive, and noting that "[i]n sum, courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered"). However, this will be a question of damage calculation, rather than an affirmative defense to the misconduct alleged. Accordingly, the Court **GRANTS** Plaintiff's Motion to Strike Defendant's Fourth Affirmative Defense. *E.g.*, *Purzel Video*

*GmbH v. St. Pierre*, 10 F. Supp. 3d 1158, 1170 (D. Colo. 2014) ("The Court finds that the [Eighth-Amendment] defense is not properly asserted as an 'affirmative defense,' which is defined as '[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true.' " (alteration in original) (quoting Black's Law Dictionary (9th ed. 2009))).

### 5. *Fifth Affirmative Defense: Failure to Mitigate Damages*

Defendant's fifth affirmative defense asserts that Plaintiff failed to mitigate damages because "rather than discouraging the purportedly unlawful sharing of its works via BitTorrent, Plaintiff has actively engaged in activity designed to encourage the sharing of its works via BitTorrent." (Answer ¶ 39, ECF No. 12.) Plaintiff argues that Defendant's "allegations are false and lack evidentiary support[,]" and that the affirmative defense "fails as a matter of law because" it is unavailable in statutory-damages-only cases. (MTS 7 (collecting cases), ECF No. 17.) Defendant responds that the defense is validly pled because Plaintiff's own Complaint establishes that "Plaintiff has monitored the IP address at issue herein for nearly three years without ever taking any action to curtail alleged infringements occurring via a monitored internet connection[,]" and that "district courts are divided on whether a failure to mitigate defense remains relevant in the context of statutory damages." (MTS Opp'n 10–11 (collecting cases), ECF No. 23.)

Ultimately, neither party cites in-circuit authority for their position, (*see* MTS 7–8, ECF No. 17; MTS Opp'n 10–11), and if a failure-to-mitigate defense is indeed viable in the statutory damages context then Plaintiff's Answer plausibly alleges a failure to mitigate. *See, e.g.*, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 677 (E.D. Va. 2015) ("District courts are divided on the question of whether a plaintiff's election of statutory damages invalidates a failure-to-mitigate defense."). This is sufficient to preclude striking Defendant's fifth affirmative defense; the Court therefore **DENIES** Plaintiff's Motion to Strike Defendant's Fifth Affirmative Defense.

/ / /

/ / /

### 6. Sixth Affirmative Defense: Waiver

Defendant's sixth affirmative defense asserts that "Plaintiff's claim is barred by the doctrine of waiver." (Answer ¶ 41, ECF No. 12.) Specifically, Defendant argues that because Plaintiff "seeded" the relevant works on the BitTorrent network, (i.e., made them available for download to all BitTorrent users), Plaintiff "demonstrated an intent to relinquish its right to limit distribution of the work via that medium." (MTS Opp'n 12, ECF No. 23.) Plaintiff argues that because Defendant "asserts that Plaintiff is a staunch protector of its intellectual property, who has 'filed upwards of 4000 [sic] lawsuits alleging infringement of its works,' " Defendant therefore cannot in good faith plead Plaintiff had any intent to relinquish rights in its works. (MTS Reply 8, ECF No. 26.)

The Court agrees with Plaintiff. Seeding the works here at issue plausibly raises an affirmative defense of waiver, and just because Defendant has filed prior lawsuits regarding its intellectual property does not insulate it from a defense of waiver in all subsequent suits. Accordingly, the Court **DENIES** Plaintiff's Motion to Strike Defendant's Sixth Affirmative Defense.

### 7. Seventh Affirmative Defense: Estoppel

Defendant's seventh affirmative defense asserts that "Plaintiff's claim is barred by the doctrine of estoppel." (Answer ¶ 43, ECF No. 12.) Plaintiff asserts that Defendant's pleading is wholly conclusory, and that a defense of estoppel is here "inconsistent with and wholly antithetical to Defendant's Answer." (MTS 8–9, ECF No. 17.) Defendant alleges that each element is met, primarily through the defense's incorporated allegations that "Plaintiff or its agents have themselves seeded Plaintiff's works to the BitTorrent network in order to entrap IP addresses, so that they may later sue the subscriber of that IP address for damages out of any proportion to the value of the seeded works." (MTS Opp'n 12–13, ECF No. 23.) These allegations are sufficient to plausibly allege (1) Plaintiff knew of the seeding, (2) Plaintiff intended for such seeding to be acted on, (3) Defendant was unaware of the foregoing, and (4) Defendant relied on the seeding to his injury. *See, e.g.*, *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960) (articulating elements).

Accordingly, the Court **DENIES** Plaintiff's Motion to Strike Defendant's Seventh Affirmative Defense.

### 8. *Eighth Affirmative Defense: Statute of Limitations*

Defendant's eighth affirmative defense asserts that "Plaintiff discovered some or all of the works allegedly being shared via the IP address at issue more than 3 years prior to the date the instant action was filed." (Answer ¶ 47, ECF No. 12.) Plaintiff asserts that Defendant's statute-of-limitations defense must fail as a matter of law because "Plaintiff has alleged that all 115 infringements occurred . . . within the applicable statute of limitations." (MTS 9–10, ECF No. 17.) Defendant is correct. "[E]ach infringing act starts a new limitations period," *Petrella*, 134 S. Ct. at 1969, and here all of the alleged infringements are within the applicable limitations period. Accordingly, the Court **GRANTS** Plaintiff's Motion to Strike Defendant's Eighth Affirmative Defense.

## CONCLUSION

Given the foregoing, the Court (1) **DENIES** Plaintiff's Motion to Dismiss, (2) **DENIES** Plaintiff's Motion to Strike Affirmative Defenses Two, Five, Six, and Seven; and (3) **GRANTS** Plaintiff's Motion to Strike Affirmative Defenses One, Three, Four, and Eight.

**IT IS SO ORDERED.**

Dated: May 1, 2017

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge